# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) ALKHEMICAL CE CORP.,<br>Plaintiff, | §<br>§<br>§ | |
| v. | § | Civil Action No. CIV-26-39-DES |
| (1) QUICK 3PL LLC,<br>Defendant. | §<br>§<br>§ | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**COMES NOW**, Alkhemical CE Corp, an Texas Corporation, and for its causes of action against the above-named Defendant, alleges and states the following:

**A. Parties**

1. Plaintiff, Alkhemical CE Corp., is a corporation that is organized under the laws of the State of Texas and registered as a foreign limited liability company in Marshall County, Oklahoma.

2. Defendant, Quick 3PL LLC, is a corporation that is organized under the laws of the State of Ohio. Defendant has its principle place of business in the State of Ohio. Defendant does not have registered agent for service of process in the State of Oklahoma, Service of process on the Defendant may be made according to the laws of the State of Ohio by serving the Registered Agent, Mr. Ovidiu Mihai Ciortan, at 6700 Lawn Avenue, Lower Unit, Cleveland, Ohio 44102.

**B. Jurisdiction**

3. This Court has subject matter jurisdiction over this action, pursuant to 28 USCS § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. This Court has personal jurisdiction over Defendant Quick 3PL LLC because the Defendant purposefully directed its activities toward Oklahoma by entering into a business transaction with an Oklahoma-based company, facilitating a shipment to Oklahoma, and deriving substantial revenue from these interstate transactions.

### C. Venue

5. This Court is the proper venue for this case, pursuant to 28 USCS § 1391, as a substantial part of the events giving rise to the claims occurred in this judicial district, including the receipt of the inferior product by Plaintiff in Oklahoma and the resulting damages suffered by Plaintiff in Oklahoma.

### D. Conditions Precedent

6. All conditions precedent have been performed or have occurred as required by Oklahoma law, pursuant to 12 Okla. St. tit. § 2009(C).

### E. Facts

7. Between July and August 2024, Plaintiff entered into purchase negotiations with Mr. Ovidio Ciortan, an authorized agent of the Defendant for a Custom Ribbon Mixer, relaying critical specifications and intended use of the custom mixer, including the requirement for a food grade design for the use of d-limonene.

8. Those negotiations resulted in a Purchase Agreement. Annexed hereto and marked as **Exhibit "A"** is a copy of the Quick 3PL LLC Invoice No. 1053 for said Mixer, dated August 19, 2024.

9. Defendant Quick 3PL LLC served as the broker of said purchase agreement, and effectively served as a agent for the manufacturer Sin Jyu Enterprise Co., Ltd.

10. Upon information and belief, Sin Jyu Enterprise Co., Ltd. is a company based out of Tainan City, Taiwan.

11. Despite the Purchase Invoice stating that the manufacturing of the custom mixer was estimated for sixty-five (65) days, the delivery of the mixer was delayed for over three months.

12. The custom mixer was eventually delivered to the Plaintiff in Oklahoma in March 2025.

13. From the beginning of the installation and use of the custom mixer at Plaintiff's facility, it was evident that there were multiple substantial problems with the custom mixer.

14. Despite critical specifications, the mixer was delivered with more than 120 galvanic corrosion and rust spots.

15. Despite critical specifications, one of the screw conveyors only operated for a few hours before failing.

16. Despite critical specifications, the custom mixer had paddle mixers installed instead of a ribbon mixer mechanism.

17. Despite critical specifications, the custom mixer did not have any Teflon scrapers installed.

18. Despite critical specifications, the custom mixer did not have any water inlets installed.

19. Despite critical specifications, the custom mixer did not have PTFE/Viton silicon and rubber seals.

20. Despite critical specifications, the custom mixer had a motor less than the 280V/480V power supply required.

21. Plaintiff made multiple attempts to negotiate with Defendant, under the 12-month Warranty, to have the custom mixer repairs and brought up to the critical specifications.

22. In April 2025, Sin Jyu Enterprise Co., Ltd. sent a welder and an engineer from Taiwan to Oklahoma to attempt to repair and remedy the custom mixer.

23. While attempting to take the custom mixer apart for repairs, the Sin Jyu Enterprise employees dropped a piece of the machine onto the Plaintiff's floor, damaging said floor in the amount of $3,000.

24. While attempting to repair the custom mixer, the Sin Jyu Enterprise employees performed superficial grinding and sealing, causing further galvanic corrosion and rust in approximately one hundred and twenty (120) locations.

25. Following the "attempted repairs", the custom mixer continued to exhibit mechanical issues, which continue today.

26. Currently, the custom mixer can only produce 50% of its intended output of solvent, due to its continued mechanical issues.

27. As a result of receiving a defective mixer, Plaintiff's production process was materially and adversely impacted. The mixer was delivered not a critically specified, which resulted in a substantial reduction in overall production output.

28. Further, as a result of receiving a defective mixer, Plaintiff has lost business opportunities due to significant lower than projected output of solvent from the mixer.

29. As a direct and proximate result of Defendant's actions, Plaintiff suffered reduced production capacity and corresponding financial, operational and consequential damages.

30. On November 13, 2025, Plaintiff, through counsel, sent a formal demand letter to

Defendant seeking compensation for damages resulting from Defendant's conduct. Annexed hereto and marked as **Exhibit "B"** is a copy of said letter.

31. Defendant failed to adequately respond to Plaintiff's demand or to compensate Plaintiff for its damages.

**Causes of Action**

**F. Cause of Action-Breach of Contract in Violation of 12A Okla. St. tit. §2-601**

32. Plaintiff repeats, re-alleges and incorporates by reference the paragraphs above, as if fully set forth herein.

33. Plaintiff and Defendant entered into a valid contract for the manufacture and purchase of Custom Ribbon Mixer. See **Exhibit "A"** hereto.

34. Plaintiff performed all of its obligations under the purchase agreement by paying Defendant a total of $224,400 for the mixer. In furtherance of its obligations, Plaintiff was extremely clear as to the critical specifications and intended use of the mixer, including the requirement for a food grade design for the use of d-limonene in its solvent.

35. Defendant breached the purchase agreement by failing to deliver the custom mixer, as specified. The components of the mixer were either installed improperly, wholly missing or made of unspecified materials, including but not limited to, installing a paddle mixer instead of a ribbon mixer, having no Teflon scrapers or water inlets, having silicon/rubber seals that were not PTFE/Viton and having pumps with non-teflon/viton seals incompatible with limonene.

36. As a direct and proximate result of Defendant's breach, Plaintiff has suffered damages, including but not limited to payment for repairs and replacement costs, unanticipated debt and business interruption and opportunity costs.

**G. Cause of Action-Breach of Express Warranty in Violation of 12A Okla. St. tit. §2-313**

37. Plaintiff repeats, re-alleges and incorporates by reference the paragraphs above, as if fully set forth herein.

38. Defendant made affirmations of fact and promises relating to the custom mixer.

39. The Purchase Invoice specifically states, in part, the Ribbon Mixer Custom will be "Ribbon blender, bottom discharge, SUS316, Ribbon agitator set, SUS316, Sidewall non contact SS41 (19mm), Contact SUS316 (6 mm thickness) – 14000 liters, 494 Cubic feet capacity with an internal capacity of 355-365 cubic feet. Estimated manufacturing time 65 days. Scraper set-Teflon-1 set. Dust Proof Seal-1 Set. Discharge Pneumatic-bottom-center-D200. Top lid cover with safety kick. SUS316. Dust top exhaust outlets x 2 sets. Water Line-2 sets. 12 months warranty".

40. Defendant also expressly stated on multiple occasions, through telephone conversations, texts and emails from July-August 2024, that the custom mixer would be manufactured as per the specifications and would be ready for delivery by approximately October 23, 2024.

41. These affirmations of fact and promises became a part of the basis of the bargain between Plaintiff and Defendant.

42. The mixer as delivered by Defendant failed to conform to these express warranties.

43. As a direct and proximate result of Defendant's breach, Plaintiff has suffered damages, including but not limited to payment for repairs and replacement costs, unanticipated debt and business interruption and opportunity costs.

**H. Cause of Action-Breach of Common Law Implied Warranty of Merchantability**

44. Plaintiff repeats, re-alleges and incorporates by reference the paragraphs above, as if fully set forth herein.

45. Defendant is a merchant with respect to the custom ribbon mixer.

46. Defendant held itself out to be a broker and agent for the transaction of purchasing a custom mixer and holds itself out as having knowledge and skill particular to such a mixing machine.

47. An implied warranty of merchantability arose in the transaction between Plaintiff and Defendant.

48. The custom ribbon mixer was not merchantable.

49. The custom mixer is not fit for the purposes for which it was intended to be used.

50. Plaintiff's first notice of the breach to Defendant was on March 19, 2025, through Whatsapp text communication.

51. Plaintiff provided written notice of the breach to Defendant through its demand letter, dated November 13, 2025. See **Exhibit "B"** hereto.

52. As a direct and proximate result of Defendant's breach, Plaintiff has suffered damages, including but not limited to payment for repairs and replacement costs, unanticipated debt and business interruption and opportunity costs.

**I. Cause of Action-Breach of Implied Warranty for Use for a Particular Purpose**

53. Plaintiff repeats, re-alleges and incorporates by reference the paragraphs above, as if fully set forth herein.

54. Defendant had reason to know of Plaintiff's particular purpose for the custom ribbon mixer.

55. The custom mixer specifications in the purchase invoice and communications between the parties demonstrate that Defendant knew of the specifications Plaintiff required for its operations.

56. Plaintiff relied on Defendant's skill and judgment as a broker/agent to select a manufacturer and facilitate the manufacturing of a suitable custom mixer.

57. Plaintiff relied on Defendant's expertise as a broker/agent to provide a product that met the specification requirements.

58. The mixer delivered by Defendant was not fit for Plaintiff's particular purpose and use.

59. Plaintiff's first notice of the breach to Defendant was on March 19, 2025, through Whatsapp text communication.

60. Plaintiff provided written notice of the breach to Defendant through its demand letter, dated November 13, 2025. See **Exhibit "B"** hereto.

61. As a direct and proximate result of Defendant's breach, Plaintiff has suffered damages, including but not limited to payment for repairs and replacement costs, unanticipated debt and business interruption and opportunity costs.

**J. Cause of Action-Negligence**

62. Plaintiff repeats, re-alleges and incorporates by reference the paragraphs above, as if fully set forth herein.

63. As the broker and agent of the manufacturer of the Custom Ribbon Mixer, Defendant had a duty to exercise reasonable care and convey accurate and precise specifications for the Mixer to ensure it was manufactured according to those specifications.

64. Defendant breached this duty of care.

65. Defendant failed to ensure the Mixer had a ribbon blender, adequate power supply of 280V/480V, adequate seals, water inlets, Teflon scrapers, pumps compatible with d-limonene and was rust free.

66. Defendant's breach was the actual and proximate cause of Plaintiff's injury.

67. As a direct and proximate result of Defendant's breach, Plaintiff has suffered damages, including but not limited to payment for repairs and replacement costs, unanticipated debt and business interruption and opportunity costs.

**K. Cause of Action-Negligent Misrepresentation**

68. Plaintiff repeats, re-alleges and incorporates by reference the paragraphs above, as if fully set forth herein.

69. Defendant made false representations in the course of its business, that it would supply a Ribbon Custom mixer of sufficient critical specifications.

70. Defendant supplied a mixer defective to such a degree that it continues to undermine plaintiff's business.

71. Defendant failed to exercise reasonable care in delivering the mechanically sufficient mixer timely.

72. Defendant failed to provide a mixer as specified, despite multiple assurances to the contrary.

73. Plaintiff justifiably relied on the Defendant's representations.

74. Plaintiff purchased the custom specified mixer for $224,400, based on Defendant's representations about its quality and specifications.

75. As a result of the Defendant's failures, Plaintiff received a mixer requiring persistent and ongoing repairs, cause operational delays and resulted in unplanned costs, causing Plaintiff financial harm.

76. As a direct and proximate result of Defendant's breach, Plaintiff has suffered damages, including but not limited to payment for repairs and replacement costs, unanticipated debt and business interruption and opportunity costs.

## L. Damages

77. As a direct and proximate result of Defendant's breach, Plaintiff suffered the following damages:

| | | |
|---|---|---|
| a. | Unanticipated direct repair/replacement costs: | $1,244,711 |
| b. | Business interruption and opportunity costs: | $8,400,000+ |
| c. | Unanticipated debt: | $400,000 |
| d. | Legal fees and costs: | $10,000+ |

## M. Attorney Fees

78. As a result of Defendant's breach, Plaintiff retained an attorney and seeks reimbursement for its reasonable attorney fees and costs, as authorized by 12 Okla. St. tit. § 936.

## N. Prayer

79. For these reasons, Plaintiff asks for judgment against Defendant for the following:

a. Consequential damages in the amount of $10,044,711 for costs incurred in remedying the situation and for business interruption and business lost resulting from the breach, pursuant to 12A Okla. St. tit. §2-715;

b. Attorney fees and costs, pursuant to 12 Okla. St. tit. § 936;

c. Pre-judgment and post-judgment interest; and

d. Such other relief as this Court deems just and proper.

Respectfully submitted,

**BRYDIE & ASSOCIATES, PLLC**

______________________________
Isaiah N. Brydie, Esq., OBA #33851
2121 S. Columbia Ave., Suite 602
Tulsa, OK 74114
(918) 900-0470– Phone
(918) 900-0475 – Fax
isaiah@brydieassociates.com